| | |
|---|---|
| SHARON PARKER<br>11398 Abbey's Way<br>Bridgeville, DE 19933 | *<br>*   IN THE |
| Plaintiff | *   U.S. DISTRICT COURT |
| v. | *   FOR THE |
| MICHELE URBAN, M.D.<br>106 Milford Street, Suite 307<br>Salisbury, Maryland 21804 | *   DISTRICT OF MARYLAND<br>* |
| AND | *   Civil Action No: |
| JOHN M. WOODS, M.D.<br>106 Milford Street, Suite 307<br>Salisbury, Maryland 21804 | *<br>*   JFM07CV 377 |
| AND | |
| JOHN M. WOODS, M.D., P.A.<br>106 Milford Street, Suite 307<br>Salisbury, Maryland 21804 | FILED ___ ENTERED<br>___ LODGED ___ RECEIVED<br>*<br>FEB - 9 2007<br>*<br>AT BALTIMORE<br>CLERK U.S. DISTRICT COURT<br>DISTRICT OF MARYLAND<br>BY _____ DEPUTY |
| **Serve On:**<br>J. Morgan White<br>212 E. Main Street<br>Salisbury, Maryland 21801 | * |
| Defendants | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff, Sharon Parker, by and through her attorneys, E. Dale Adkins III, Emily C. Malarkey, and Salsbury, Clements, Bekman, Marder & Adkins, LLC, hereby sues the Defendants, Michele Urban, M.D, John M. Woods, M.D., and John M. Woods, P.A., and states as follows:

1. The Plaintiff is a resident of the State of Delaware.

1

2. The Defendants Michele Urban, M.D. and John M. Woods, M.D. are residents of the State of Maryland.

3. The Defendant John M. Woods, M.D., P.A. is a corporate entity incorporated under the laws of Maryland and with a principal place of business in Maryland.

4. The amount of this claim exceeds $75,000.

5. Jurisdiction exists under 28 U.S.C. § 1332.

6. This cause of action arose at the Peninsula Regional Medical Center in Maryland. The Defendants reside in and conduct business in the State of Maryland.

7. Venue in Maryland is proper under 28 U.S.C. § 1391.

8. Pursuant to Maryland law, this case was previously filed in the Health Care Alternative Dispute Resolution Office of Maryland, along with a Certificate of Qualified Expert. Plaintiff elected to waive arbitration, and the Health Care Alternative Dispute Resolution Office entered an Order of Transfer. *See Exhibits 1, 2, and 3.*

9. At all times hereinafter set forth, the Defendant, Michele Urban, M.D., held herself out to the Plaintiff and to the general public as an experienced, competent, and able physician and health care provider, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and gynecology, and as such, owed a duty to the Plaintiff to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of medicine and gynecology.

10. At all times hereinafter set forth, the Defendant, John M. Woods, M.D.,

held himself out to the Plaintiff and to the general public as an experienced, competent, and able physician and health care provider, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and gynecology, and as such, owed a duty to the Plaintiff to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of medicine and gynecology

11. At all times hereinafter set forth, the Defendant, John M. Woods, M.D., P.A., was and is a professional association which, at all relevant times, offered medical and OB/GYN services to the general public and in such capacity, this professional corporation, its agents, servants and employees, held themselves out as practicing ordinary standards of medical and health care and, in such capacity, had a duty to the Plaintiff to render and provide health care within the ordinary standards of medical and health care and to exercise reasonable skill and care in the selection of its personnel to provide competent physicians, and other medical personnel, nurses and consultants, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and obstetrics and gynecology.

12. At all times hereinafter set forth, Michele Urban, M.D. was and is an agent, servant, employee, or apparent agent of John M. Woods, M.D., P.A.

13. At all times hereinafter set forth, John M. Woods, M.D. was and is an agent, servant, employee, or apparent agent of John M. Woods, M.D., P.A.

14. In December of 2003, Sharon Parker came under the care of Dr. Michele

Urban, a gynecologist practicing medicine in Salisbury, Maryland. Ms. Parker complained of PMS, menorrhagia (excessive menstrual bleeding), and severe dysmenorrhea (painful menstruation). Dr. Urban performed an examination of Ms. Parker and diagnosed her with a small uterus with uterine fibroids.

15. On March 5, 2004, Dr. Urban admitted Ms. Parker to the Peninsula Regional Medical Center (PRMC) in Salisbury, Maryland, for a hysterectomy in order to control her fibroids and bleeding problems. The surgery was performed by Dr. Urban, with Dr. John M. Woods assisting. The surgical procedure involved separating the uterus from the bladder, or developing the bladder flap. Failure to properly develop the bladder flap can result in injury to the bladder when the uterus is removed.

16. About twelve days after her surgery, Ms. Parker called Dr. Urban complaining of pelvic pain and the inability to control her urination. Dr. Urban advised Ms. Parker to come in the following Monday. When she came in, Ms. Parker was admitted to PRMC, a Foley catheter was placed, and she was then discharged.

17. A few days later, on March 25, 2004, Ms. Parker called Dr. Urban in extreme pain. Dr. Urban agreed to admit Ms. Parker to PRMC for a 23-hour period. During this 23-hour period, a sonogram was performed on Ms. Parker, which showed an 8 x 5 accumulation of fluid in the pelvis. Notwithstanding this fact, Dr. Urban discharged Ms. Parker from PRMC.

18. Ms. Parker returned to PRMC on March 27, 2004, still complaining of pain and leaking urine. Several days into this admission, a cystogram was performed and it was noted that a suture was placed through the mucosa of her bladder. This misplaced suture caused Ms. Parker to develop a vesico vagina fistula. A vesico

vaginal fistula is an abnormal passageway between the vagina and the bladder, two organs that do not usually, and should not, connect. A vesico vaginal fistula causes the perpetual leak of urine from the bladder and out the vagina. Ms. Parker was discharged on 2, 2004, with an indwelling catheter to see if the fistula would heal on its own.

19.  In April of 2004, still using the indwelling cathether, Ms. Parker came under the care of Dr. Stanley Silber, a urologist at Mercy Medical Center in Baltimore. Dr. Silber noted that Ms. Parker was still suffering from vaginal leakage. He also performed a cystogram, which showed a significant vesico vaginal fistula. Dr. Silber recommended that Ms. Parker see Dr. Dwight Im, a gynecologist at Mercy Medical Center, to discuss the possibility of surgically correcting the fistula.

20.  In May of 2004, Ms. Parker came under the care of Dr. Im, who performed a reparative surgery to correct the vesico vaginal fistula along with Dr. Silber on May 26, 2004.

21.  At least two additional reparative surgeries were done to correct the vesicovaginal fistula, the last occurring on March 15, 2005, performed by Dr. Neil Rosenshein.

22.  Sharon Parker continues to have problems with bladder function to this day.

23.  The Defendants were negligent and careless and breached standards of care in that they:

      a.  Failed to properly develop the bladder flap or separate Ms. Parker's bladder from her uterus during her hysterectomy;

5

    b.    Failed to properly place sutures during the hysterectomy procedure;

    c.    Failed to promptly diagnose the misplaced suture and vesico vaginal fistula;

    d.    And were otherwise negligent.

24. As a direct result of the Defendants' negligence, Sharon Parker has been caused to suffer painful and permanent injuries to her body; was caused to incur and will continue to incur in the future hospital and medical expenses; and has sustained severe mental anguish and emotional pain and suffering, financial losses and damages; and will continue to experience mental anguish, pain and suffering, and financial losses and damages in the future.

25. All of the Plaintiff's injuries and damages are directly and proximately caused by the acts or omission of the Defendants, without any negligence on the part of the Plaintiff contributing thereto.

WHEREFORE, the Plaintiff, Sharon Parker, claims damages against the Defendants, Michele Urban, M.D., John M. Woods, M.D., and John M. Woods, M.D., P.A., in an amount that exceeds $75,000.

 

_____
E. Dale Adkins, III, Bar No. 01425
Emily C. Malarkey, Bar No. 28197
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, LLC
300 W. Pratt St., Ste. 450
Baltimore, MD 21201
(410) 539-6633

*Attorneys for Plaintiff*