IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHARON PARKER | * | |
| Plaintiff | * | |
| | | Case No. JFM-07-CV-377 |
| v. | * | |
| MICHELE URBAN, M.D., et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF
DEFENSE EXPERT MICHAEL SPODAK, M.D. AND TO PRECLUDE
ADMISSION OF PLAINTIFF'S MENTAL HEALTH RECORDS**

Plaintiff, Sharon Parker, by and through her attorneys, E. Dale Adkins, Emily C. Malarkey, and Salsbury, Clements, Bekman, Marder & Adkins, LLC, files this Memorandum in Support of her motion *in limine* to preclude the testimony of defense expert Michael Spodak, M.D., and to preclude admission of Plaintiff's mental health records, and states as follows.

**Summary**

The jury at this trial must whether the Defendants, Michele Urban, M.D. and John M. Woods, M.D., were negligent during a hysterectomy procedure performed March 5, 2004, on the Plaintiff, Sharon Parker, and if so, what injury Ms. Parker suffered as a result. Ms. Parker has a substantial mental health history that is irrelevant to the issues the jury must decide.

During discovery, however, the Defendants have sought numerous medical records of Ms. Parker's mental health treatment, both before and after the hysterectomy, which they seek to admit into evidence at trial. They have successfully moved to compel a Rule 35 mental health examination of Ms. Parker, and plan to call a forensic psychiatrist, Michael Spodak, M.D., to

testify.

Ms. Parker's mental health records and the testimony of Dr. Spodak should be excluded because they are irrelevant to the issues the jury must decide. If admitted, evidence pertaining to Ms. Parker's mental health will turn this medical negligence trial into a trial-within-a-trial regarding Ms. Parker's past and current mental health. It will confuse the jury and be a senseless waste of the Court and parties' time and resources.

## Background

1.     The Lawsuit

On March 5, 2004, Sharon Parker, a 37-year old, underwent a hysterectomy performed by the Defendants, Michelle Urban, M.D., and John M. Woods, M.D. During the procedure, Drs. Urban and Woods failed to properly separate the bladder from the uterus and vagina (a process known as "developing the bladder flap"). As a result, when they sutured the top of the vagina closed, the Defendants placed a stitch into Ms. Parker's bladder. The stitch caused the surrounding tissue to die from loss of blood supply, and led to a vesicovaginal fistula (an abnormal passageway from the bladder to the vagina), through which urine leaked.

About twelve days after the surgery, Ms. Parker began leaking urine from her vagina. The vesicovaginal fistula was diagnosed and the stitch discovered, and Ms. Parker underwent three surgeries over the course of the next year to repair it. She now suffers from permanent urinary incontinence, and recently underwent an operation to test an Interstim device, which controls bladder function by shooting electrical impulses into the sacral nerve. That procedure was not successful, and Ms. Parker continues to wear Depends around the clock. She suffers from chronic pain, has lost her job and home, and has endured tremendous emotional damage.

2.     Ms. Parker's Mental Health History

Ms. Parker was diagnosed with bipolar disorder as a teenager. At a young age, she was hospitalized for anorexia and bipolar disorder. She spent much of her teenage years in and out of psychiatric institutions, including one full year in Sheppard Pratt in Baltimore.

By the early 1990s (in her early 20's), Ms. Parker's mental health was under control through the assistance of medication. She had no further psychiatric hospitalizations. She maintained several jobs, obtained her bachelors degree in her mid-20's, and even moved to Chicago for three years to obtain a master's degree in psychology. For approximately six years before the March 5, 2004 hysterectomy, she had been working as a psychologist, mostly with children, and for a brief time with mentally retarded adults. Although she sought regular counseling, her bipolar disorder was under control with medication; she lived on her own; and was a functioning member of society.

Since the hysterectomy, Ms. Parker's mental health has once again declined. In December of 2004, she was admitted for a 24-hour suicide watch at Dorchester General Hospital, and in November of 2005, she was admitted for approximately one week to Sheppard Pratt Hospital in Baltimore for suicidal ideation. She has not been hospitalized since November of 2005, and today successfully controls her bipolar disorder through medication and counseling.

3.     Ms. Parker's Allegations Concerning Mental And Emotional Injury

As outlined in Plaintiff's Complaint and Opposition to the Defendants' Motion to Compel a Rule 35 Mental Health Examination (Document Number 21), the sole allegation Ms. Parker has made in this lawsuit with respect to mental and emotional damage is that, as a result of the Defendants' negligence in placing a stitch in her bladder, the need to undergo three surgeries to correct the fistula caused by the misplaced stitch, the permanent incontinence that has resulted, and the failed attempt to place a sacral nerve stimulation device to control her

incontinence, she has generally suffered mental and emotional damage.

At no point in this litigation has Ms. Parker contended that her pre-existing condition of bipolar disorder (diagnosed long before the negligence) – or any other specific mental health disorder – was caused by the Defendants' negligence.  She has never contended that the Defendants' negligence caused the need for mental health treatment or medication beyond that which she was already on before the March 5, 2004 hysterectomy.  She has never contended that any psychiatric hospitalization resulted from the Defendants' negligence.  She has not even contended that her pre-existing mental health problems were exacerbated or worsened by the Defendants' negligence.

Indeed, when she named expert witnesses in support of her case, Ms. Parker did not identify a counselor or psychiatrist who would testify as to the nature and extent of her emotional losses.  Nor did she file a claim for intentional infliction of emotional distress.

In short, Ms. Parker has only maintained in this lawsuit that the Defendants' negligence caused her emotional pain and suffering of the general, non-specific, "garden" variety found in every personal injury case.  She has not therefore placed her mental health "at issue," as surely will be argued by the defense.

4.     Defendants' Evidence Pertaining To Ms. Parker's Mental Health

At trial, Defendants will seek to introduce into evidence numerous volumes of medical records dealing with Plaintiff's mental health, dating before and after the March 5, 2004 hysterectomy (from 1994 through the present).  These include the records of Sheppard Pratt Hospital, Dorchester General Hospital, Johns Hopkins Hospital, Jethal Harkani, M.D., Jeanette Zaimes, M.D., Doris Garner, Ph.D., Karen Alleyne, M.D., Surrinder Kappoor, M.D., Juan De La Torre, M.D., and Barbara Durham, LSCW.

Additionally, Defendants will call Michael Spodak, M.D., a forensic psychiatrist, to testify at trial. Dr. Spodak has examined Ms. Parker pursuant to Federal Rule of Civil Procedure 35, and has issued a report that is attached as Exhibit 1. That report outlines the six opinions Dr. Spodak will render at trial. They are:

1. In my opinion, Ms. Parker's condition indicates a tendency toward exaggeration and embellishment.

2. In my opinion, the surgery of 3/5/04 and the resultant complications did not cause any worsening of Ms. Parker's underlying and preexisting psychiatric difficulties.

3. In my opinion, Ms. Parker has experienced a number of psychosocial stressors since the subject surgery of 3/5/04 that could well explain the various mental and emotional problems that she has described since the surgery.

4. In my opinion, the surgery of 3/5/04 with the resultant complications did not cause and necessitate Ms. Parker to have any additional mental health intervention that she might otherwise have needed based on her preexisting and underlying emotional difficulties.

5. In my opinion, Ms. Parker's psychiatric hospitalization in November, 2005 was not causally related or attributable to the consequences of the subject surgery of 3/5/04.

6. In my opinion, from a mental and emotional perspective, Ms. Parker is capable of substantial, gainful employment on a full time basis, in much the same way that she was prior to the subject surgery of 3/5/04.

For the following reasons, none of Ms. Parker's mental health records should be admitted into evidence, and Dr. Spodak should be precluded from testifying at trial.

**Argument**

1. Plaintiff's Mental Health Records Are Irrelevant And Should Be Excluded

Because Ms. Parker does not allege mental or emotional damage beyond the "garden"

variety found in all personal injury cases, and does not allege an exacerbation of a pre-existing mental health condition, her mental health records are irrelevant and must be excluded. *See* Fed. R. Evid. 401, 402. The jury does not need to read Ms. Parker's mental health records in order to understand that multiple invasive and painful surgeries, the need to wear diapers at the age of 41, chronic pelvic pain, and the plethora of other embarrassing and painful conditions from which she suffers will cause a woman of her age to suffer mentally and emotionally.

These records should also be excluded because their admission will confuse the jury and unnecessarily prolong the trial. *See* Fed. R. Evid. 403. If Ms. Parker's mental health records are admitted into evidence (and particularly if Dr. Spodak is permitted to testify, *see* argument *infra*), undoubtedly this trial – which is supposed to be about what happened during a March 5, 2004 hysterectomy – will turn into a trial-within-a-trial regarding Ms. Parker's mental health. Ms. Parker was diagnosed with bipolar disorder as a teenager, and was in and out of psychiatric institutions until about 1990. Since her teenage years, she has consistently sought treatment from counselors, and medication from psychiatrists, to help her manage her mental illness. It goes without saying that the voluminous records and testimony regarding this treatment will shift the jury's focus from the real issues in this case, and be a senseless waste of judicial economy.

Accordingly, Federal Rules of Evidence 401, 402, and 403 require that Ms. Parker's mental health records be excluded from evidence at trial.

2.  <u>Dr. Spodak Should Be Precluded From Testifying At Trial Because None Of The Opinions He Intends To Offer Are Relevant Or Helpful To The Jury</u>

    A.    *Because Plaintiff Has Never Alleged That The Hysterectomy Worsened Or Caused Her Psychiatric Difficulties Since March 5, 2004, Dr. Spodak Should Not Be Permitted To Testify To Those Issues*

Four of the opinions outlined in Dr. Spodak's report should be precluded because they are

not in dispute.  They are:

> 2. In my opinion, the surgery of 3/5/04 and the resultant complications did not cause any worsening of Ms. Parker's underlying and preexisting psychiatric difficulties.
>
> 3. In my opinion, Ms. Parker has experienced a number of psychosocial stressors since the subject surgery of 3/5/04 that could well explain the various mental and emotional problems that she has described since the surgery.
>
> 4. In my opinion, the surgery of 3/5/04 with the resultant complications did not cause and necessitate Ms. Parker to have any additional mental health intervention that she might otherwise have needed based on her preexisting and underlying emotional difficulties.
>
> 5. In my opinion, Ms. Parker's psychiatric hospitalization in November, 2005 was not causally related or attributable to the consequences of the subject surgery of 3/5/04.

*See* Exhibit 1 at page 5.

As explained in detail above, Ms. Parker has never contended that the March 5, 2004 hysterectomy caused or worsened her pre-existing mental health disorder, caused the November 2005 hospitalization at Sheppard Pratt, or caused a need for additional mental health "intervention" beyond that which would have needed anyway.  Nor has she denied that other "psychosocial stressors" besides the hysterectomy have contributed to her current mental state. Because she has never put these facts "at issue," Dr. Spodak's opinions are of absolutely no help to the jury in resolving the facts of this case, and therefore must be excluded.  *See* Fed. R. Evid. 702.

> B. *Dr. Spodak's Opinions Regarding Ms. Parker's Employability Are Irrelevant Because Plaintiff Does Not Claim Loss Of Future Earning Capacity.*

Similarly, Dr. Spodak's opinion that Ms. Parker is mentally and emotionally capable of gainful employment is unhelpful to the jury because Ms. Parker has abandoned her claim for loss

of future earning capacity, and will not introduce evidence on loss of future earning capacity at trial.  Accordingly, Dr. Spodak's opinions regarding her employability are irrelevant and unhelpful to the jury, and should be precluded.  See Fed. R. Evid. 702, 403.

    C.    *Dr. Spodak Should Not Be Permitted To Testify That Ms. Parker Has A "Tendency Toward Exaggeration And Embellishment" Because Issues Of Credibility Are For The Jury Alone To Decide*

Finally, Dr. Spodak should not be able to opine that "Ms. Parker's condition indicates a tendency toward exaggeration and embellishment."  This opinion goes right to the heart of Ms. Parker's credibility as a witness inasmuch as it states (or at the very least strongly suggests) that Ms. Parker's testimony – including testimony relating to her damages and current medical condition – is not to be believed.  This testimony is improper and, for the following reasons, must be excluded under Federal Rules of Evidence 702 and 403.

It is well-established that witnesses – even experts in psychology or psychiatry – are not permitted to testify regarding the credibility or truth-telling ability of other witnesses.  *See U.S. v. Cecil,* 836 F.2d 1431, 1441 (4th Cir. 1988) ("[T]he authorities seem uniform that a psychiatrist may not testify to the credibility of a witness; that issue is one for the jury."); *see also Nimely v. City of New York,* 414 F.3d 381, 397-98 (2nd Cir. 2005) ("[T]his court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, ***even when such evaluations are rooted in scientific or technical expertise***, are inadmissible under Rule 702.").  No specialized or technical expertise on credibility is required; rather, credibility determinations are "experience-based" ones the jury is capable of making without the aid of an expert.[1]  *See id.* at 396.  Therefore, testimony that "undertakes to tell the

---

[1] Indeed, the only Federal Rule that permits opinion testimony on the issue of credibility is Rule 608, which allows a witness to opine on another witness's "character for truthfulness."  *See Cecil,* 836 F.2d at 1442.

jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's," is not helpful under Rule 702. *Id.* at 397.

Accordingly, Federal Circuit Courts have reversed District Courts that have permitted expert testimony on issues of credibility.[2] *See, e.g., Nimely,* 414 F.3d at 398 (reversible error to allow forensic pathologist to testify that witnesses were "telling the truth as they perceived it"); *U.S. v. Charley,* 189 F.3d 1251, 1266-67 (10th Cir. 1999) (error to admit testimony of pediatrician that essentially "vouched" for testimony of sexual abuse victim). In *Nichols v. American National Insurance Company,* 154 F.3d 875, 882 (8th Cir. 1998), the Eighth Circuit considered the decision to permit testimony of a psychologist that the plaintiff "had a tendency to blur fantasy with reality," had "poor psychiatric credibility," and could not "report her psychological symptoms accurately." The Court held that this testimony on "psychiatric credibility [and] malingering," was a "thinly veiled comment on a witness' credibility." *Id.* at 883-84. It held that it was plain error to admit the testimony, explaining that because "[w]eighing evidence and determining credibility are tasks exclusive to the jury[,] . . . an expert should not offer an opinion about the truthfulness of witness testimony." *Id.*

That Court further held that the testimony was inadmissible under Rule 403. It explained that testimony regarding truth-telling "create[s] a serious danger of confusing or misleading the jury, causing it to substitute the expert's credibility assessment for its own common sense[.]" *Id.* (quotation and citation omitted). It stated that the expert's comment on the plaintiff's reliability was "in the guise of a medical opinion, and this impressively qualified expert's stamp of

---

[2]Maryland State courts have also done so. *See Bentley v. Carroll, M.D.,* 355 Md. 312, 332-35, 734 A.2d 697, 708-10 (1999) (reversible error at admit testimony of forensic psychiatrist that plaintiff was exaggerating her complaints); *Globe Security Systems Co. v. Sterling,* 79 Md. App. 303, 306-08, 556 A.2d 731, 733-74 (Md. App. 1989) (reversible error to permit psychologist to testify that plaintiff was not lying).

untruthfulness on [the plaintiff's] story went beyond the scope of proper expert testimony." *Id.* (quotation and citation omitted).

The Sixth Circuit has pointed out that permitting expert testimony on credibility leads to a trial-within-a-trial on the issue. *See U.S. v. Ramirez,* 871 F.2d 582 (6th Cir. 1989). "If the doors are opened to a battle of experts testifying as to witnesses' credibility, there would be no end to the collateral consequences[,]" it said, explaining that permitting an expert to testify as to one witness's credibility would open the door to expert testimony on all the trial's witnesses' credibility. *Id.*

In perhaps the most comparable case to this one, the Maryland Court of Appeals considered the testimony of a forensic psychiatrist that a plaintiff in a medical malpractice action was exaggerating her complaints. *See Bentley,* 355 Md. at 332-35, 734 A.2d at 708-10. Like Dr. Spodak in this case, the forensic psychiatrist relied in part on the administration of psychologic testing as the basis for his opinions. The court reversed the trial court's decision to permit the testimony, stating that ***no person "can qualify as an 'expert in credibility,' no matter what his experience or expertise***" and that "[i]t is the settled law of this State that a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *Id.* at 334, 734 A.2d at 709 (citations omitted) (emphasis added).

For all of these reasons, Federal Rules of Evidence 702 and 403 preclude Dr. Spodak from testifying that Ms. Parker "has a tendency toward exaggeration and embellishment," or any other such commentary on Ms. Parker's credibility.

## Conclusion

For all of the aforegoing reasons, this Court should grant this Motion *in Limine* to exclude all of Plaintiff's mental health records from evidence at trial, and to preclude

Defendants' expert Michael Spodak, M.D. from testifying at trial.

                                                  ____/s/_____
                                                  E. Dale Adkins
                                                  Emily C. Malarkey
                                                  SALSBURY, CLEMENTS, BEKMAN, MARDER
                                                  & ADKINS LLC
                                                  300 W. Pratt St., Suite 450
                                                  Baltimore, MD 21201
                                                  (410) 539-6633
                                                  *Attorneys for Plaintiff*